GENNERT et al. v. BURKE & JAMES, Inc.

(Circuit Court of Appeals, Second Circuit.   May 8, 1917.)

No. 213.

PATENTS ⊙▭328—INVENTION—FLASH-LIGHT APPARATUS.
   The Mills patent, No. 676,545, for a flash-light apparatus, *held* void for
lack of invention, in view of the prior art.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Gustav C. Gennert and others against Burke & James, Incorporated.   Decree for defendant, and complainants appeal. Affirmed.

See, also (D. C.) 231 Fed. 998.

The defendant is a corporation organized and existing under the laws of the state of Illinois.   The suit is brought to restrain the alleged infringement of letters patent No. 676,545 and for an accounting and damages.   The court below held the patent was not valid and dismissed the bill.   The patent issued on June 18, 1901, to Charles Mills, a subject of Great Britain residing in New York City, and all the right, title, and interests in the said letters patent, and in the invention therein described became vested by assignment in the plaintiff prior to the filing of his complaint.

C. P. Goepel, of New York City, for appellants.

Clifford E. Dunn, of New York City, and Rudolph William Lotz, of Chicago, Ill., for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.


ROGERS, Circuit Judge.   The patent in suit is for improvements in flash-light apparatus.   The patentee declared in his specifications that his invention—

"consists in a cheap, simple, and reliable apparatus for producing flash lights for photographic purposes, such as photographing interiors and making pictures at night."

The patent contains six claims, but only 1, 2, and 4 are in suit.   Claim 1 reads as follows:

"In a flash-light apparatus, the combination of a suitable support, a pan, an anvil or firing pin arranged on one side of the pan, and a hammer arranged on the opposite side of the pan and adapted to co-operate with the pin to explode a percussion cap."

Claim 2 reads as follows:

"In a flash-light apparatus, the combination with a suitable support, a pan, a firing pin, a hammer arranged to co-operate with the pin to explode a cap arranged between the pin and hammer, a spring for throwing the hammer, and a trigger arranged to hold the hammer temporarily away from the firing pin."

Claim 4 reads as follows:

"In a flash-light apparatus, the combination, with a powder receptacle, of a firing pin extending into said receptacle, a hammer arranged to co-operate with the firing pin to explode a cap placed between said pin and a wall of the powder receptacle, a spring for throwing the hammer toward the pin, and a trigger for holding the hammer away from the pin."

The drawings and specification of the patent in suit show a pan on a suitable support, with an anvil arranged above or on one side of the pan and the hammer arranged below the pan or on the opposite side thereof, and adapted to co-operate with the anvil or pin to explode a percussion cap. But the claims do not specify that a firing pin should be above the pan and the hammer should be below. It is, however, argued that when claim 1 is read we find therein the requirement that a firing pin must be arranged "on one side of the pan"; that this means that this pan is the pan of the specification, namely a horizontal pan, as this is the only kind described therein, and which must be held horizontal, because otherwise the powder would not remain on it, but would fall off; that hence this claim requires that the anvil or firing pin must be that kind of an anvil or pin arranged as shown in the description and drawings, namely, an anvil or firing pin arranged above the cap and above the pan, and the hammer must be arranged below the pan, so as to carry out the co-operative law underlying the specification.

The invention described and claimed in the patent comprises a long, narrow, open pan, which is adapted to receive the flash powder, which is spread out over a considerable area of the pan. This pan is mounted in its horizontal position upon a standard which is adapted to be secured to a table or other support, and which is equipped with mechanism for exploding a percussion cap for igniting the flash powder. This pan is reinforced by means of a wooden strip 9 along the bottom, so as to give it rigidity. This exploding mechanism consists of a firing pin 11 disposed above the pan and between the lower end of which and the pan the percussion cap is adapted to be received. Pivotally mounted on the standard below the pan is a hammer 15 which carries a projection 14 adapted to strike the lower face of the pan opposite the point of the firing pin 11 for exploding the cap between the pan and the firing pin. The hammer is actuated by means of the tension spring 17 secured to one end of the hammer and to the standard 5, and serves to normally hold the projection 14 in engagement with the lower face of the pan 1. Pivotally mounted on the standard is a trigger 19, which is adapted to engage a projection 18 on the hammer for holding the latter away from the pan in the position shown in Fig. 2. A cord 21 attached to the trigger 19 serves to enable the latter to be drawn out of engagement with the hammer, whereupon the latter flies up and strikes the pan, thus driving the firing pin into the cap and exploding the latter. The flame from the cap ignites the powder on the pan, with the usual well-known result.

It is admitted that the patentee's device is a very simple one, but it was emphasized in the argument in this court that the device embodies two fundamental scientific considerations, which are not simple or

obvious. The first of these considerations set forth is that the anvil or firing pin *11* and the cap *12* are placed upon the upper or same side of the pan upon which the flash-light powder is heaped, so that both the firing pin and the cap are in direct contact with the flash-light powder, and are "immersed" in the flash-light powder. The spark emitted by the cap is, therefore, directly communicated to the flash-light powder, which insures a rapid and reliable ignition. When the cap is exploded, the flash travels to the sides of the firing pin, and then upwardly. The location of the firing pin spreads out the heated gases generated by the percussion of the cap, so that these heated gases act upwardly upon a ring of the particles of the powder.

The second consideration set forth is that, since the hammer *14* is below the pan *1*, the upward blow of the hammer, which explodes the cap, also simultaneously jars the pan, and throws the flash-light powder upward and away from the pan. The feeble flash or explosion of the weak caps that are used is communicated to the flash-light powder under such circumstances as utilizes the entire explosive effect of the cap; the flash-light powder is in such a condition that it readily secures oxygen from the atmosphere and ensures a reliable ignition. "In other words," counsel says in his brief, "the upwardly moving hammer of the patent structure strikes the resilient and slightly depressed pan and jars it, and throws the powder upwardly, it separates the compact pile of powder placed upon the pan into upwardly moving and widely separated particles, so that each particle is freely exposed to the air, and is thrown above the percussion cap simultaneously with its explosion. The flash of the cap is prevented from moving downwardly because of the closed structure of the pan."

Because of this law of operation it is said that the structure of the patent in suit can use commercially pure magnesium powder, which is unquestionably the safest, as it is not explosive, but simply burns. The result is an instantaneous and brilliant flash, and there is no danger of the ignition being delayed, which would be a source of uncertainty and accident. On the argument great importance was attached to the use of pure magnesium, instead of the other kind of flash-light powders, which consist of a mixture of magnesium powder with chemicals of an explosive nature, such as potassium chlorate. The argument is that the upward blow of the hammer serves to shake up the powder on the pan and promote combustion thereof, on the theory that more air will be commingled with the powder by this shaking or loosening up action. The importance of the flat pan is said to be that the magnesium can be spread out over a large area of surface very thinly, thus giving ready access to air to supply ample oxygen for promoting combustion. Whether a like result was secured in any of the patents of the prior art will presently appear.

The defendant, however, denies that the upward blow against the pan will produce the result claimed. The reason given is that the blow is delivered so near to the point of connection of the pan with the standard and is so localized that it cannot possibly serve to shake up the whole pan, to produce the alleged novel result upon which the complainant chiefly relies as the principal novel feature of the patent.

If that is the patent's principal novel feature, it is strange that the patentee made no reference to it in his specification. The patent is silent as to any advantage arising from the upward blow, and this characteristic is in no way claimed, and if the purpose of constructing the pan flat was to permit the magnesium to be spread out over a large area of surface thinly, so as to give ready access to air and supply ample oxygen for combustion, it is difficult to understand why the specification made no allusion thereto.

There were six patents introduced in evidence by defendant to invalidate the patent in suit, but we find it necessary to refer to only one of them. The King patent was issued November 28, 1899, and is letters patent No. 637,800. The invention, the specification states, relates to improvements in devices for producing flash lights for photographic purposes.

"The object of the invention is to provide a simple, efficient, and compact device capable of use by a photographer or an amateur and conveniently carried with the small or folding cameras now in such common use, so that a flash light may be conveniently utilized by the amateur photographer almost anywhere."

The receptacle which holds the flash light is termed a "trough," and is shaped like a diminutive brick hod, which is made of a thin sheet of metal. On the corner of the trough is a perforation of sufficient size for the introduction of a match. On the transverse end of the trough is secured a spring. A trigger is provided, which is adapted to swing up and engage the spring. A match or "other percussion material" being inserted in the aperture, the spring snaps against the end of the material inserted and drives it against the head of a screw, which serves as an anvil, and the concussion causes the same to ignite firing powder. In his specification King states that:

"It is needless to remark that another projection than the head of the screw F might be provided as an anvil for exploding the match, and, for that matter, any percussion device, such as a paper cap, might be used in that position, and a pin, like the stem of the match 1, be provided for firing the same, which would be a mere equivalent."

The only difference between the King patent and the patent in suit is that in the latter the blow of the hammer is in a direction perpendicular to the powder-supporting surface, or pan bottom, while in the former the blow is administered longitudinally of the pan. In the King patent the firing pin and the hammer are both above the pan, and the firing pin is at one side of the cap, and the pan itself is not struck upwardly, nor is it resiliently depressed.

Counsel for complainant argued that the blow of the hammer could not, therefore, stoke or agitate the powder, or throw it upwardly, so as to cause the particles of the powder to be widely separated from each other, and thus be capable of ready ignition. The result it is claimed is an unfavorable condition for reliable ignition, magnesium requiring a considerable amount of air, and if a large amount of powder should be used the spark produced by the percussion cap would be smothered by the superimposed powder, as it would not be agitated or stoked or thrown upwardly by the blow of the hammer, and if the

powder should be laid in a thin quantity, so as to be below the spot of the explosive material in the cap, the upward part of the flash of the cap would not infringe upon any of the powder, so that a great part of the igniting effect would be lost.

In the Mills structure of the patent in suit, the argument is the magnesium powder can be laid in a thick heap over the cap if a brilliant flash be desired, for the upward blow of the hammer would throw the heap of powder upward and separate the particles, and the entire flash of the cap be utilized, because the powder is thrown above the cap, and the flash of the cap is spread to the sides of the firing pin.

But this argument overlooks the fact that in the King patent, if it is desired to produce a light of considerable duration, the trough or pan can be lengthened by telescopic sections, which are adapted to slip onto the main part of the trough and lengthen the same indefinitely, so that the pan can be extended a number of inches, or several feet, for that matter. So that, while the pan of the King patent is not flat, but long and narrow, it allows the powder to be spread out in a thin line for proper combustion.

The real and only difference we discover between the device of the patent in suit and that of the King patent is, as we have stated, in the direction of the blow of the hammer. If the fact be disregarded that the patentee of the Mills patent did not claim as a feature of his patent the advantage of the jar which an upward blow afforded, it nevertheless seems to this court that the patent cannot be sustained. The modification of the King device, so that the blow should be administered upwardly, instead of longitudinally, involved simply ordinary mechanical skill.

For that reason the decree is affirmed.